## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL KOKINDA,

     Plaintiff,

          v.

POLICE OFFICER CARL BREINER,
POLICE OFFICER JEFFREY OHL,
BOROUGH OF LANSFORD, and
BOROUGH OF NEWQUEHONING,

     Defendants.

CIVIL ACTION No. 3:07-CV-1861

(JUDGE CAPUTO)

### MEMORANDUM

Presently before the Court are two (2) Motions to Dismiss Plaintiff Paul Kokinda's Amended Complaint (Doc. 7), filed by Defendants Nesquehoning Borough and Officer Carl Breiner (Doc. 8) and by Defendants Officer Jeffrey Ohl and Borough of Lansford (Doc. 10). Because Plaintiff has withdrawn his "failure to intervene" claim in Count III; because he stated a claim for excessive force in violation of the Fourth Amendment against the individual and municipal defendants, as well as state law claims for assault, battery, and intentional infliction of emotional distress against Defendants Breiner and Ohl; because Breiner and Ohl do not have immunity from these state law claims under the Political Subdivision Tort Claims Act; because Plaintiff did not state a claim for malicious prosecution in violation of the Fourth Amendment or false arrest claims under either federal or state law; and because punitive damages under § 1983 may not be recovered from municipalities, Defendants' motions will be granted in part and denied in part. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

Defendant Jeffrey Ohl is an officer in the police department of Defendant Borough of Lansford ("Lansford").  Defendant Carl Breiner is an officer in the police department of Defendant Borough of Nesquehoning ("Nesquehoning").  At the time of the actions relevant to Plaintiff's claims, Breiner was a police officer for Defendant Lansford and at times operated under the terms of a Mutual Assistance Agreement between the Boroughs of Lansford and Nesquehoning.  (Am. Compl., Doc. 7, ¶¶ 5-8.)

Plaintiff Paul Kokinda alleges the following:  On or about June 21, 2007, at approximately 10:00 p.m., Defendants Breiner and Ohl appeared in the backyard of Plaintiff's residence on Abbott Street in Lansford, Pennsylvania, and Plaintiff asked Defendants to leave his property.  (*Id.* ¶¶ 11-12.)  Defendants responded that they believed a person from a neighboring property had entered Plaintiff's yard, and Plaintiff told them he did not know anything about that, and again requested they leave.  (*Id.* ¶ 13.)  Breiner then "made a motion toward his sidearm, and indicated that he would shoot Plaintiff's dog."  (*Id.* ¶ 14.)  Plaintiff requested that Defendants stop harassing him and leave his property, and at this, Defendant Breiner "grabbed Plaintiff by his left arm, violently twisting it behind his back, and Defendant Ohl force[d] Plaintiff to the ground by twisting his arm behind his back."  (*Id.* ¶¶ 15-16.)  Plaintiff felt a "tearing and popping sensation" in his left elbow, and cried out, "You just broke my arm."  (*Id.* ¶ 17.)  Defendant Ohl continued to restrain Plaintiff on the ground with his knee in Plaintiff's back, while Defendant Breiner handcuffed Plaintiff."  (*Id.* ¶ 19.)  Plaintiff never resisted or struggled in any way, and at the time Breiner and Ohl arrested him, they had not witnessed Plaintiff

2

engage in any conduct that violated Pennsylvania law and did not have reasonable suspicion that he had violated the law.  (*Id.* ¶¶ 18, 20, 24.)

Defendants then transported Plaintiff to the Lansford police station, where he was held for several hours before he was transported back to his home.  (*Id.* ¶¶ 21-22.) Plaintiff alleges that Defendants Breiner and Ohl attacked and arrested him because they were motivated, solely or in part, by a "desire to conceal their illegal conduct, and to avoid any civil liability flowing therefrom."  (*Id.* ¶ 26.)  Plaintiff alleges that Defendants Lansford and Nesquehoning acted through their employees and either "personally participated in," knew of, or had reason to know of the actions and omissions Plaintiff alleges.  (*Id.* ¶ 10.)

As a result of the Defendants' conduct, Plaintiff alleges that he suffered physical injury; pain and suffering; medical expenses; attorney's fees and costs to defend against a criminal action; embarrassment, humiliation, and loss of reputation; loss of the use, benefit, and enjoyment of life; continued emotional, psychological, and physical distress; impaired professional opportunities and loss of earnings and earning capacity; loss of the freedoms of movement, association, and familial privacy; and loss of the freedoms from illegal imprisonment, false arrest, and malicious prosecution.  (*Id.* ¶¶ 29-30, 34.)

In Count I, Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 against Defendants Nesquehoning, Lansford, Breiner, and Ohl, alleging that they violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution by, *inter alia*, (1) maliciously prosecuting him; (2) using "unwarranted excessive and/or deadly force ... which was designed or calculated to punish the Plaintiff"; (3) failing to train the Defendants in proper methods to be used when employing force and making arrests; (4)

3

demonstrating callous and deliberate indifference in failing to train, oversee, monitor, control, curtail, or restrain the actions of the individual Defendants in carrying out the arrest, imprisonment, and prosecution of Plaintiff when the Borough Defendants knew or should have known from prior actions by the individual Defendants that there was a substantial likelihood that citizens like Plaintiff would suffer injury and constitutional violations; (5) failing to develop, implement, or carry out policies that provided for the proper and constitutional use of force, arrest, imprisonment, and prosecution; and (6) developing, implementing, and carrying out policies, practices, procedures, and/or customs that (a) were designed to allow officers to use unreasonable force, abuse criminal process, and deprive individuals of their constitutional rights, (b) assigned certain personnel in a way that "would result in the likelihood of serious injury to citizens and their individual rights," and (c) amounted to cruel and unusual punishment and a deprivation of life and liberty.  (*Id.* ¶¶ 31-33.)

In Count II, Plaintiff brings a claim against Lansford and Nesquehoning under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), incorporating all previous allegations and alleging that all Defendants were acting or failing to act pursuant to the Borough Defendants' official policies and practices at relevant times.  (*Id.* ¶¶ 33-34.)  Plaintiff also brings the following claims against Defendants Ohl and Breiner: "Failure to Intervene to protect Plaintiff from attack by an unsupervised, unescorted inmate" (Count III), Assault (Count IV), Battery (Count V), Intentional Infliction of Emotional Distress (Count VI)[1],

---

[1]

While identifying Officer Briener as "Carl Breiner" throughout the Amended Complaint, Plaintiff instead lists "Michael Brenier," as a defendant in Count VI.  The Court will take this to be a typographical error rather than a claim against a fifth, otherwise unidentified

False Arrest (Count VII), and False Imprisonment (Count VIII).  Plaintiff requests

compensatory and punitive damages for both his state law claims and his § 1983 claims,

as well as declaratory and injunctive relief, among other remedies.  (*Id.* ¶¶ 56-61.)

Defendants Breiner and Nesquehoning move to dismiss Plaintiff's Amended

Complaint (Doc. 8), as do Defendants Ohl and Lansford (Doc. 10).  These motions are

fully briefed and ripe for disposition.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of

a complaint, in whole or in part, for failure to state a claim upon which relief can be

granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the

complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible

on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167

L.Ed.2d 929 (2007), meaning, enough factual allegations "to raise a reasonable

expectation that discovery will reveal evidence of" each necessary element.  *Phillips v.

County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see also Kost v. Kozakiewicz*, 1

F.3d 176, 183 (3d Cir. 1993) (requiring complaint to set forth information from which each

element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2),

the statement need only "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests."  *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167

L.Ed.2d 1081 (2007) (per curiam).  "[T]he factual detail in a complaint [must not be] so

_____

Defendant.

5

undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id.* The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

### I. Count III

Plaintiff concedes that his claim in Count III, failure to intervene, "was not properly framed in the complaint," and has withdrawn it.  (Mem. of Law in Supp. of Pl.'s Combined Answer to Defs.' Mots. to Dismiss [hereinafter "Br. in Opp'n"], Doc. 13, at 2.)  Accordingly, this Count will be dismissed.

### II. Constitutional Claims

Plaintiff brings claims under 42 U.S.C. § 1983, which provides that every person who, under color of state law, subjects any citizen of the United States to the deprivation of any federal right shall be liable to the party injured.

#### A. Excessive Force

(1) Defendants Breiner and Ohl

Plaintiff argues that Defendants Breiner and Ohl have not challenged the excessive force claims against them in Count I.  (Br. in Opp'n, Doc. 13, at 13 & n.2.)  Although these claims are not addressed in Defendants Ohl's briefs, (*see* Docs. 11 & 15), Defendant Breiner's brief does state that Counts I through III "fail to assert any cognizable cause of action against the Moving Defendants, and should be dismissed in their entirety."  (Doc. 9, at 2.)  And both parties moved to dismiss the Amended Complaint entirely, warranting an analysis of the sufficiency of Plaintiff's allegations.

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable."

*Curley v. Klem*, 499 F.3d 199, 203 n.4 (3d Cir. 2007)) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)).  "An officer seizes a person whenever he 'restrains the freedom of a person to walk away.'" *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).  Plaintiff has alleged that he was held to the ground by the officer-Defendants; he has thus alleged a seizure, and Defendants do not argue otherwise.

Plaintiff must also allege that the seizure was unreasonable.  A seizure is reasonable under the Fourth Amendment if, under the totality of the circumstances, "the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight.  *Id.* at 396.  In making a reasonableness assessment, a court also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.  *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

Plaintiff has alleged that the force used against him was excessive and has offered

the following factual allegations in support: Defendants Breiner and Ohl "violently twist[ed]" his arm behind his back, after he had offered no resistance whatsoever, that Defendant Ohl continued to restrain Plaintiff on the ground with his knee in Plaintiff's back after Plaintiff cried out "You just broke my arm."  (Am. Compl., Doc. 7 ¶¶ 16-20.)  Plaintiff alleges also that these actions were taken to punish Plaintiff rather than for legitimate purposes.  (*Id.* ¶ 32-33.)  In light of these allegations, I will not dismiss the Fourth Amendment excessive force claims against Defendants Breiner and Ohl.

(2) <u>Municipal Defendants</u>

A municipality cannot be held liable for the actions of its employees under § 1983 based upon *respondeat superior.  Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978).  However, "the government as an entity is responsible under § 1983" when it "caused" the Plaintiff's injury; that is, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Id.* at 694.  Where, as here, Plaintiff alleges that the flawed policy is a failure to train, the municipality can be held liable when "'that failure amounts to 'deliberate indifference . . . [to the constitutional] rights of persons with whom the police come in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted).  There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional]' injury.'" *Id.* at 325  (citations omitted).

To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation."  *Grayson v.*

*Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)).  But, despite Defendants' arguments that Plaintiff has failed to allege any specific policies that authorized the actions Officers Breiner and Ohl allegedly took, (Doc. 9, at 10; Doc. 11, at 6-8), there is no requirement at the pleading stage for Plaintiff to identify a specific policy to survive a motion to dismiss. *Carter v. City of Philadelphia*, 181 F.3d 339, 358 (3d Cir. 1999).  This would be "unduly harsh" at this early juncture.  *Id.*

Here, Plaintiff has claimed that Defendants Lansford and Nesquehoning caused the officers' alleged use of excessive force by (1) failing to develop, implement, and carry out policies that conform with the Constitutional requirements regarding the use of force, (2) failing to train officers in the appropriate use of force, and (3) developing, implementing, and carrying out a policy which threatened the Boroughs' citizens "in that the assignment of certain personnel would result in the likelihood of serious injury to citizens and their individual rights."  (Am. Compl., Doc. 7 ¶ 33.)  Plaintiff has also alleged that the Borough Defendants demonstrated deliberate indifference in such actions and omissions.  (*Id.*)  Accepting these facts, and all reasonable inferences therefrom, as true, Plaintiff could, after discovery, prevail on this claim by enunciating the specific policies and demonstrating how they violated his rights.  For this reason, Defendants' motion to dismiss the excessive force claims against the Borough Defendants will be denied.

### B. Malicious Prosecution

(1) Defendants Breiner and Ohl

A malicious prosecution claim under § 1983 differs from the common law tort.  *See*

*Donahue v. Gavin*, 280 F.3d 371, 379 (3d Cir. 2002).  A plaintiff must base his claim on a

deprivation of liberty or some constitutional right other than substantive due process.[2]

When, as here, the claim is brought under the Fourth Amendment, the elements of a

malicious prosecution claim under § 1983 are (1) the defendant initiated a criminal

proceeding; (2) he did so without probable cause; (3) the proceeding ended in plaintiff's

favor; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff

to justice; and (5) as a consequence of a proceeding, the plaintiff suffered a deprivation

of liberty consistent with the concept of seizure.  *Johnson v. Knorr*, 477 F.3d 75, 81-82

(3d Cir. 2007).

Malicious prosecution also differs from false arrest.  While a claim for false arrest

"covers damages only for the time of detention until the issuance of process or

arraignment, and not more," a claim for malicious prosecution "permits damages for

confinement imposed *pursuant to legal process*."  *Id.* at 82 (internal quotation marks and

citations omitted; emphasis added).  Specifically, the fifth element of the claim requires

that Plaintiff have suffered a deprivation of liberty consistent with seizure "*as a*

---

[2]

In the wake of the Supreme Court's holding in *Albright v. Oliver*, 510 U.S. 266 (1994) (holding
that the substantive component of the Due Process Clause of the Fourteenth Amendment
provides no relief for one who claims he has been prosecuted without probable cause;
"express[ing] no view" on whether such relief would be available under other amendments), the
Third Circuit Court of Appeals has unequivocally stated that a claim of malicious prosecution may
be based on a liberty interest protected by the Fourth Amendment or some other provision of the
constitution, provided its not based on the substantive component of the Due Process Clause.
*See, e.g., Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000); *Torres v.
McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998).

*consequence of* a legal proceeding." *Id.* (emphasis added).  For instance, in *Gallo v. City of Phila.*, the Third Circuit Court of Appeals held that "the legal proceeding was the indictment," and then analyzed the "post-indictment" restrictions on the plaintiff's liberty. 161 F.3d 217, 222 (3d Cir. 1998).

Here, in support of the fifth element – a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding – Plaintiff alleged that he was subjected to "post-arrest seizure of his person, including but not limited to physical restraint and incarceration, and being compelled to attend Court proceedings upon threat of arrest and detention."  (Am. Compl., Doc. 7 ¶ 32.)  "Merely being required to appear at trial ... is not a sufficient deprivation of liberty" to support a claim for malicious prosecution. *Wiltz v. Middlesex County Office of Prosecutor*, No. 06-3610, 2007 WL 2717862, at *3 (3d Cir. Sept. 19, 2007) (citing *Dibella v. Borough of Beechwood*, 407 F.3d 599, 603 (3d Cir. 2005)).  And Plaintiff does not allege that the "post-arrest seizure, ... including physical restraint and incarceration" occurred as a result of legal process rather than occurring in the hours immediately following his arrest.  In fact, because he states that he attended court proceedings "upon threat of arrest and detention," it appears that he was not detained prior to the proceedings.  Most significant, however, is that Plaintiff does not allege in his Amended Complaint the third element of a malicious prosecution claim, that criminal proceedings against him terminated in his favor.  He alludes to favorable termination in his opposition brief (Br. in Opp'n, Doc. 13, at 5), but no allegation of favorable termination is properly before this Court.  *See West Penn Power Co.*, 147 F.3d at 263 (holding that the Court need not assume that the plaintiff can prove

12

facts that were not alleged in the complaint).  For this reason, Defendants' motions to dismiss Plaintiff's malicious prosecution claims will be granted.

(2) Municipal Defendants

No *Monell* liability can attach to municipal defendants if no individual officials have violated a plaintiff's rights.  *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989).  Thus, Plaintiff has not stated a claim of malicious prosecution against the individual Defendants, his claims of malicious prosecution against Lansford and Nesquehoning in Counts I and II will likewise be dismissed.

**C. False Arrest and False Imprisonment**

A claim under § 1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures.  *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 236 (3d Cir. 1995)).  To maintain his false arrest claims, "a plaintiff must show that the arresting officer lacked probable cause to make the arrest."  *Id.*  "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense."  *Id.*

"[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).  However, unlike a malicious prosecution claim, for which each criminal charge is analyzed independently, a false arrest claim will fail if there was probable cause to arrest for at least one of the offenses involved.  *Johnson*, 477 F.3d at 75; *see also Barna v. City of Perth Amboy*, 42

13

F.3d 809, 819 (3d Cir. 1994) (holding that for an arrest to be justified, "[p]robable cause need only exist as to any offense that could be charged under the circumstances").

Plaintiff has alleged that Defendants Breiner and Ohl arrested him without probable cause and with knowledge that they had no factual or legal basis for the arrest. (Am. Compl., Doc. 7 ¶¶ 24-25.)  He has thus alleged the two (2) elements of a false arrest claim under  § 1983.  However, Defendants have introduced a docket entry indicating Plaintiff's guilty plea to a harassment charge (*see* Non-Traffic Citation Docket, Ex. A to Doc. 9, Ex. B to Doc 13), which, as a matter of public record, the Court may consider in deciding a motion to dismiss.  *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. Furthermore, despite his allegations in the Amended Complaint that Defendants lacked probable cause that he committed any crime, Plaintiff states in his opposition brief that he "is constrained to concede that the officers in this case had probable cause to believe that he had committed a summary offense, harassment." (Br. in Opp'n, Doc. 13, at 8.) Defendants argue that this plea and concession conclusively establish that probable cause existed at the time of arrest, citing *Heck v. Humphrey*.  (*See* Doc. 9, at 5; Doc. 11, at 13.)  Under the *Heck* doctrine, a plaintiff may not recover damages under § 1983 for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

14

Plaintiff argues that the *Heck* doctrine does not apply because, in his particular case, a finding that his arrest violated the Fourth Amendment would not necessarily imply the invalidity of his harassment conviction.  His conviction would imply the invalidity of his conviction and be barred by the *Heck* doctrine if Plaintiff's argument in support of his false arrest claim were that his harassment charge lacked probable cause, but this is not what Plaintiff argues.  Plaintiff's argument that his arrest was unreasonable within the meaning of the Fourth Amendment is instead that (1) no probable cause existed for the charges other than harassment which were brought against him, and (2) his warrantless arrest on the harassment charge was unreasonable under the Fourth Amendment because it was not permitted under state law.  Harassment, Plaintiff argues, is a "summary offense" under Pennsylvania law, for which police have authority only to issue a ticket, not to arrest.  (*See* Br. in Opp'n, Doc. 13, at 5-12.)

Plaintiff urged the Court to delay ruling on this issue until the Supreme Court issued its decision in *Virginia v. Moore*, which considered whether an arrest based on probable cause but prohibited by state law violated the Constitution.  The Court's recent decision in that case, however, forecloses Plaintiff's argument.  The Court held that "[a] State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional."  *Virginia v. Moore*, --- S. Ct. ---, No. 06-1082, 2008 WL 1805745, at *6 (Apr. 23, 2008).  "When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest," and "while States are free to regulate such

15

arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at *8-9.

Thus, Plaintiff's guilty plea to the charge of harassment, and his concession that the arrest for that crime was based on probable cause, defeat his § 1983 claim of false arrest.  Because Plaintiff has not stated a claim for false arrest/false imprisonment under § 1983, the motions to dismiss this claim brought on behalf of both the individual and the municipal Defendants will be granted.

### III. State Law Claims

#### A. False Arrest and False Imprisonment (Counts VII and VIII)

"[F]alse arrest and false imprisonment are essentially the same claim."  *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999) (citing Pennsylvania cases). There are two elements to a claim of false imprisonment under Pennsylvania law: "(1) the detention of another person, and (2) the unlawfulness of such detention."  *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  Plaintiff has alleged that Breiner and Ohl lacked probable cause to arrest him for the charges of disorderly conduct and resisting arrest, but Plaintiff concedes, as noted above, that there was probable cause at the time of his arrest that he had committed the crime of harassment.

Although courts state that "[i]n Pennsylvania, a false arrest is defined as 1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so," *Rusoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000), the cases

involving false arrest claims against police officers turn on the existence or nonexistence of probable cause.  Plaintiff has neither explicitly argued – nor put forth Pennsylvania authority to support an argument – that an officer who makes a warrantless arrest for a "summary offense," based on probable cause, may nonetheless be a person "without privilege" to make such an arrest and that therefore the arrestee has a common law false arrest claim against that officer.  Indeed, "Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive as to both elements of proof and elements of damages." *Rusoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000).  As such, because *Virginia v. Moore* forecloses Plaintiff's federal false arrest claim; because Plaintiff has cited no authority suggesting that federal and state law ought not be co-extensive in the factual situation he presents; and because it is not the place of a federal court to expand state law by creating a novel claim, I will grant Defendants' motion to dismiss Plaintiff's state law false arrest and false imprisonment claims.

### B. Assault and Battery (Counts IV and V)

"Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk*, 641 A.2d at 293. Because police officers have authority to use "such force as is necessary under the circumstances" to make an arrest, it is "the reasonableness of the force used in making the arrest" that "determines whether the police officer's conduct constitutes an assault and battery." *Id.*

17

Plaintiff's claims for these common law torts are brought only against Defendants Breiner and Ohl.  (*See* Br. in Opp'n, Doc. 13, at 2.)  Breiner and Ohl argue that they are immune from these claims under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. § 8541, et seq.  (Br. in Supp., Doc. 9, at 11-12.)  The PSTCA grants municipalities immunity from liability for any damages resulting from an injury to a person or property caused by an act of the City, its employee, or any other person, except in certain enumerated exceptions not applicable here.  42 PA. CONS. STAT. ANN. § 8542. Because the exceptions do not apply, any claims against Breiner and Ohl in their official capacities, which are equivalent to claims against the municipal Defendants, will be dismissed.

The immunity of the PSTCA also "extends to an employee of the City who is liable [in his individual capacity] for civil damages caused by acts which are within the scope of his office or duties."  *Renk*, 641 A.2d at 292.  But, the immunity for individual employees does not extend to conduct that amounts to actual fraud, crime, actual malice or willful misconduct.  *See id.*; 42 PA. CONS. STAT. ANN. § 8550 n.17.  If the alleged assault, battery, and intentional infliction of emotional distress either occurred outside the scope of Breiner and Ohl's employment or amounted to willful misconduct, then they are not immune under the PSTCA.

Plaintiff has alleged that each Defendant officer was "at all times relevant hereto ... acting *individually* and/*or* within the scope of his duties and authority," and that the officers subjected him to assault and battery motivated by their desire to conceal their own illegal conduct.  (Am. Compl. Doc. 7 ¶¶ 6, 8, 26) (emphasis added).  So, for the

18

purposes of this motion, I must accept that the officers were acting outside the scope of their duties and cannot grant them immunity on that ground.  As for willful misconduct, the court in *Renk* explained that claims of assault and battery against police officers performing an arrest might, but do not necessarily, involve willful misconduct.  *See* 641 A.2d at 293.  Because, based on the allegations in Plaintiff's Amended Complaint, Defendants Breiner and Ohl may have engaged in willful misconduct in their use of force, they are not at this time entitled to immunity under the PSTCA, and their motions to dismiss the assault and battery claims will be denied.

### C. Intentional Infliction of Emotional Distress (Count VI)

Although it is unsettled whether a tort for intentional infliction of emotional distress exists in Pennsylvania, Pennsylvania courts generally assume for purposes of analysis that the tort exists, and proceed to hold that to survive a motion to dismiss, the allegations must "at a minimum" correspond with the provisions of the RESTATEMENT (SECOND) OF TORTS § 46(1).  *Reardon v. Allegheny College*, 926 A.2d 477, 487 & n.12 (Pa. Super. Ct. 2007).  Those provisions are that (1) the conduct is extreme and outrageous; (2) it is intentional or reckless; (3) it causes emotional distress; (4) that distress is severe.  RESTATEMENT (SECOND) OF TORTS § 46(1).  Extreme and outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997).  "It has not been enough that the defendant acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that

his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Reardon*, 926 A.2d at 488 (quoting *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998)).  Generally, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous'!"  *Strickland*, 700 A.2d at 987.

In addition, to prevail on an intentional infliction of emotional distress claim, a plaintiff must provide competent medical evidence to prove the existence of emotional distress. *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987); *see Hunger v. Grand Central Sanitation*, 670 A.2d 173 (Pa. Super. Ct. 1996) (holding that, to prevail on intentional infliction of emotional distress claim, a plaintiff must prove that the defendant's conduct was extreme and outrageous and that the plaintiff suffered a medically confirmed injury).

In light of this standard, conduct amounting to the tort of intentional infliction of emotional distress would constitute willful misconduct; Defendants' argument for immunity from this claim under the PSTCA is thus without merit.  Plaintiff has alleged that Defendants Breiner and Ohl physically injured him, necessitating medical attention.  (Am. Compl., Doc. 7 ¶ 34(h)).  He has also alleged that in doing so, the officers acted in a deliberate, malicious, extreme and outrageous manner, and that he suffered severe emotional distress.  (*Id.* ¶¶ 45-48.)  While the sufficiency of Plaintiff's medical evidence may be considered at a later stage of litigation, he has at this stage stated a claim for intentional infliction of emotional distress against Defendants Breiner and Ohl in their

individual capacities.  The motions to dismiss these claims will therefore be denied.


**IV. Punitive Damages**

Finally, Defendants Ohl and Lansford move to dismiss Plaintiff's claims of punitive damages against Lansford and against Ohl to the extent he is sued in his official capacity.  Punitive damages under § 1983 are not available against municipalities. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).  Therefore, their motion to dismiss claims for punitive damages against the municipal Defendant will be granted.


**CONCLUSION**

Because Plaintiff has withdrawn his "failure to intervene" claim in Count III, that claim will be dismissed.  Because Plaintiff stated a claim for excessive force in violation of the Fourth Amendment against the individual and municipal defendants, as well as state law claims for assault, battery, and intentional infliction of emotional distress against Defendants Breiner and Ohl, and because Breiner and Ohl do not have immunity from these state law claims under the Political Subdivision Tort Claims Act, Defendants' motions to dismiss these claims will be denied.  Because Plaintiff did not state a claim for malicious prosecution in violation of the Fourth Amendment or false arrest claims under either federal or state law, and because punitive damages under § 1983 may not be recovered from municipalities, Defendants motions to dismiss these claims will be granted.

An appropriate order follows.


May 6, 2008                                    /s/ A. Richard Caputo
Date                                           A. Richard Caputo
                                               United States District Judge

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PAUL KOKINDA,

      Plaintiff                      CIVIL ACTION No. 3:07-CV-1861

           v.                   (JUDGE CAPUTO)

POLICE OFFICER CARL BREINER,
POLICE OFFICER JEFFREY OHL,
BOROUGH OF LANSFORD, and
BOROUGH OF NEWQUEHONING,

      Defendants.

<u>**ORDER**</u>

     Now, this   6th   day of May, 2008, it is **HEREBY ORDERED** that Defendants' motions to dismiss (Docs. 8 & 10) are **GRANTED** in part and **DENIED** in part, as follows:

(1)    Defendants' motions are **GRANTED** with respect to the following claims, which are **HEREBY DISMISSED**:

    (a)    Count III of Plaintiff's Amended Complaint.

    (b)    Plaintiff's malicious prosecution and false arrest claims against all Defendants brought pursuant to 42 U.S.C. § 1983, in Counts I and II.

    (c)    Plaintiff's state law claims of false arrest and false imprisonment in Counts VII and VIII.

(2)    Defendants' motions are **DENIED** with respect to the following claims:

    (a)    Plaintiff's excessive force claim brought pursuant to 42 U.S.C. § 1983 against all Defendants, in Counts I and II.

    (b)    Plaintiff's state law claims of assault, battery, and intentional infliction of emotional distress in Counts IV, V, and VI.

                           /s/ A. Richard Caputo
                            A. Richard Caputo
                            United States District Judge